# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| NIKKO TAYLOR WRIGHT,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Civil Action No. TDC-18-1659<br>Crim. Action No. TDC-16-0260 |

## MEMORANDUM OPINION

Nikko Taylor Wright has filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. In his Motion, Wright challenges his conviction and sentence in the underlying criminal action on the basis that his trial counsel acted in a constitutionally deficient manner. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* Rule 8(a), Rules Governing Section 2255 Proceedings for the United States District Courts; D. Md. Local R. 105.6. For the reasons set forth below, the Motion is DENIED.

## BACKGROUND

On May 25, 2016, a federal grand jury returned a one-count Indictment charging Nikko Wright ("Wright") and ten others with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances 500 g or more of Cocaine and a Detectable Amount of Heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). The Indictment issued after a two-year investigation in multiple states.

According to a factual statement agreed to by Wright, between March 2014 and May 2016, Wright was a member of a drug trafficking organization ("DTO"), led by his brother and co-

defendant Mario Wright, that formed the basis of the conspiracy charge. The DTO was based in Newark, New Jersey, but it reached into other states, including Connecticut and Maryland. Wright was the head of the Maryland arm of the DTO, which received heroin and cocaine from Mario Wright in New Jersey in amounts meant for distribution. Wright orchestrated the transfer of drugs from New Jersey to Maryland either by driving to New Jersey and picking up drugs, delegating that duty to his Maryland associates, or meeting Mario Wright's associates in Maryland or at a highway rest area in Delaware to conduct the handoff. Wright oversaw the distribution of cocaine and heroin obtained from Mario Wright to drug dealers and users in Maryland.

Wright at times possessed firearms and ammunition as part of his role in the DTO. Specifically, Shahryar Talebi-Nejad, another member of the DTO, stored at his home a Rossi .38 caliber revolver, six CBC .38 caliber cartridges, and two Winchester .38 caliber cartridges for Wright. On March 16, 2016, Wright asked Talebi-Nejad to bring the revolver and cartridges to him. Wright put the firearm and ammunition in the trunk of a car in which he was riding, next to cocaine meant for sale, during a trip to threaten a drug customer who had recently attacked Wright's sister and insulted Wright. That night, Wright was seriously injured when he and his driver, Daniel Rocco Famulare, led the police on a high-speed chase and crashed the car into a tree.

Following the return of the Indictment, attorney William A. Mitchell, Jr. was appointed as Wright's counsel. On February 24, 2017, Wright entered into a plea agreement in which he agreed to plead guilty to the Indictment. The plea agreement was entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), under which Wright would be permitted to withdraw his guilty plea if the Court did not agree to sentence him within the parties' agreed-upon sentencing range of 78 to 96 months of imprisonment "regardless of the applicable [United States Sentencing

Guidelines] calculations." Plea Agreement ¶ 9, ECF No. 316; *see* Fed. R. Crim. P. 11(c)(1)(C). The parties agreed that the total offense level under the United States Sentencing Guidelines ("Guidelines") was 29, including a two-level enhancement to the base offense level because Wright had possessed a dangerous weapon, pursuant to U.S.S.G. § 2D1.1(b)(1). In the plea agreement, Wright admitted that he knowingly possessed the Rossi revolver in furtherance of the drug trafficking conspiracy. In signing the agreement, Wright attested that he had "read this agreement" and "carefully reviewed every part of it with my attorney." Plea Agreement 8. His attorney confirmed that he had reviewed the plea agreement with Wright. Wright further affirmed that he voluntarily agreed to the plea agreement, had reviewed the Factual and Advisory Guidelines Stipulation with his attorney and did "not wish to change any part of it," and was "completely satisfied with the representation of my attorney." *Id.*

On February 24, 2017, Wright pleaded guilty to the drug conspiracy charge. At the sentencing hearing on June 26, 2017, the Court found that the total offense level was 30, including the agreed-upon two-level enhancement for a dangerous weapon and a three-level increase for Wright's role in the conspiracy as a manager under U.S.S.G. § 3B1.1(b), and that the Guidelines range was 108–135 months, but sentenced Wright to 90 months of imprisonment, within the parties' agreed-upon range. At the hearing, Wright's counsel conceded that the possession of the gun "was sufficient under the guidelines and under the case law to prove at least a two-level enhancement" due to the proximity of the gun to the drug business, but argued to the Court that the possession was not "in furtherance of in the actual sense" because Wright was reacting in anger to the assault of his sister. Sentencing Hr'g Tr. 18, ECF No. 521-2. Wright did not file a direct appeal of his conviction and sentence. On June 5, 2018, he filed the pending Motion.

## DISCUSSION

In his Motion, Wright collaterally attacks his conviction based on his claim of ineffective assistance of counsel. Specifically, he asserts that his attorney's performance was constitutionally inadequate by failing to contest the two-level sentencing enhancement for possessing a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1), to investigate mitigating circumstances surrounding his possession of that weapon, and to present evidence of those mitigating circumstances to the Court. He appears to complain about the application of this particular enhancement because it has made him ineligible for a reduction in his sentence of up to one year based on successful completion of the Bureau of Prisons' Residential Drug Abuse Program ("RDAP"). *See* 18 U.S.C. § 3621(e)(2)(B) (2012). Offenders who have been convicted of an offense involving the possession of a firearm are not eligible for early release through RDAP. 28 C.F.R. § 550.55(b)(5)(ii) (2018).

### I. Legal Standards

#### A. Section 2255 Motions

A prisoner in federal custody may move to vacate, set aside, or correct his sentence on the basis that: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) the sentencing court lacked jurisdiction; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a) (2012). The petitioner bears the burden of proof and must establish the claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). A hearing is necessary where there are disputed issues of fact that need to be

resolved in order for the court to rule on the motion. *See United States v. Witherspoon*, 231 F.3d 923, 927 (4th Cir. 2000). "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Moreover, absent extraordinary circumstances, a court may, "without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements" made during a Rule 11 guilty plea colloquy, because such allegations are "'palpably incredible' and 'patently frivolous or false.'" *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005). Because, as discussed below, Wright has not asserted extraordinary circumstances that would justify departure from this rule, and the Court need not resolve factual disputes in order to resolve the Motion, the Court declines to hold an evidentiary hearing.

### B. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution affords a criminal defendant the right to "Assistance of Counsel." U.S. Const. amend. VI. The United States Supreme Court has stated that "assistance which is ineffective in preserving fairness [of a trial] does not meet the constitutional mandate." *Mickens v. Taylor*, 535 U.S. 162, 166 (2002). A petitioner alleging ineffective assistance of counsel in violation of the Sixth Amendment must meet the standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under this standard, the petitioner must show both deficient performance and prejudice—that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.* at 687, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. This

*Strickland* test applies when the petitioner alleges ineffective assistance in the context of plea negotiations and a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

On the issue of whether counsel's performance was deficient, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. When evaluating an attorney's strategic decisions, the court should be "highly deferential" to the attorney's judgment and avoid hindsight. *Id.* at 689, 691. Counsel has the "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. However, while Strickland requires counsel to "conduct a reasonable investigation into potential defenses," it does not oblige counsel to "uncover every scrap of evidence that could conceivably help their client." *Green v. French*, 143 F.3d 865, 892 (4th Cir. 1998), *overruled on other grounds by Williams v. Taylor*, 529 U.S. 362 (2000). The court should keep in mind that "what the lawyer did not miss is 'just as (or more) important as what the lawyer missed'" in evaluating the effectiveness of counsel. *United States v. Roane*, 378 F.3d 382, 411 (4th Cir. 2004) (quoting *Coe v. Bell*, 161 F.3d 320, 342 (6th Cir. 1998)).

To meet the prejudice requirement when the petitioner has pleaded guilty, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. If the petitioner alleges that his counsel was ineffective in failing "to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea," which, in turn, "will depend in large part on a prediction whether," based on an objective analysis, "the evidence likely would have changed the outcome of a trial." *Id.* at 59–60.

Even if an attorney performed deficiently in advising a defendant, the "defendant may be unable to show prejudice if at the Rule 11 proceeding the district court provides an admonishment that corrects the misadvice and the defendant expresses that he understands the admonishment." *United States v. Akinsade*, 686 F.3d 248, 253 (4th Cir. 2012); *see United States v. Swaby*, 855 F.3d 233, 240 (4th Cir. 2017). However, statements by the district court that are "general and equivocal," rather than a "careful explanation," would not cure the "affirmative misadvice" of counsel. *Akinsade*, 686 F.3d at 253.

## II. The Firearm Enhancement

The Court finds unpersuasive Wright's claim of ineffective assistance of counsel arising from his attorney's failure to conduct sufficient investigation to identify mitigating evidence in order to contest the two-level enhancement for possession of a firearm in furtherance of the drug conspiracy. First, Wright's claim fails because his claim that the gun was not related to the drug conspiracy is contradicted by his sworn testimony during the plea colloquy. During the Rule 11 hearing, when the Government stated the factual basis for the plea, it specifically stated that "[d]uring the course of this conspiracy," Wright "knowingly possessed firearms and ammunition," described the placement of Wright's firearm and ammunition in a car with drugs on March 16, 2016, asserted that "Wright intended to use that firearm and ammunition to threaten one of Nikko's drug customers, an individual who had recently assaulted one of Nikko's sisters and insulted Nikko," and stated that he "did so in furtherance of the aforementioned drug trafficking conspiracy." Plea Hr'g Tr. at 27–28, ECF No. 521-1. Notably, although Wright objected to a different portion of the statement of facts alleging that he had brokered a particular drug transaction while he was in the hospital, prompting an adjustment to the statement of facts, he otherwise agreed to the statement of facts and expressed no objection to the facts relating to the firearm. He likewise

7

had signed the written version of the statement of facts containing the same factual assertions and attested that "I have read [the Statement of Facts] and carefully reviewed every part of it with my attorney" and "I understand it, and I voluntarily agree to it." Plea Agreement 11. Where Wright acknowledged under oath that he had possessed the firearm on March 16, 2016 to threaten a drug customer "in furtherance of" the "drug-trafficking conspiracy," *id.* at 10, his present claim that his attorney's representation was deficient for failing to show that the gun possession was unrelated to the drug conspiracy runs contrary to his sworn statements and thus necessarily fails. *See Lemaster*, 403 F.3d at 221–22. Based on these admissions, counsel was not ineffective for failing to contest the firearm enhancement. *See United States v. Pollard*, 139 F.3d 895, 1998 WL 166337, at *1 (4th Cir. 1998) (unpublished) (finding that counsel was not deficient for failing to contest a sentencing enhancement for a leadership role in a drug conspiracy where the facts supporting the sentencing enhancement were contained in the statement of facts agreed to in the plea agreement).

Wright's claim that his counsel was ineffective because he failed to investigate the circumstances surrounding the gun possession is further contradicted by Wright's statements at the plea hearing regarding his attorney. The plea agreement specifically provided that the parties agreed to the two-level enhancement for possession of a dangerous weapon. At the plea hearing, Wright affirmed to the Court that he had had "the opportunity to read and discuss this plea agreement with [his] attorney before [he] signed it," and that he understood "the terms of the plea agreement." Plea Hr'g Tr. 13–14. During the plea colloquy, the prosecutor specifically recounted the parties' agreement relating to the Guidelines calculation, including the fact that the parties had agreed to the firearm enhancement, and Wright acknowledged that he understood those provisions. Furthermore, when the Court asked if he was "fully satisfied with [his attorney's] advice, representation, and counsel in this case," Wright responded, "Absolutely." Plea Hr'g Tr. 5. Where

Wright was fully aware when he pleaded guilty that his attorney had agreed to the two-level firearms enhancement, his present claim that his counsel was ineffective for failing to take steps to disprove the facts underlying that enhancement is contradicted by his testimony that he was entirely satisfied with his counsel's performance.

Second, the record establishes that the facts that Wright now asserts his counsel should have uncovered through further investigation were known to counsel and presented to the Court. Although Wright claims that additional investigation would have shown that he transported the gun and drugs on March 16, 2016 to confront his sister's husband for beating his sister, during the sentencing hearing, his attorney presented these same facts to the Court. Specifically, his attorney stated:

> What the particular connection of the firearm in this case was to this case as I think the Court has discerned is his sister got into some sort of serious argument with her husband and Mr. Wright sort of going the Sonny Corleone route tells one of his guys, hey, get that gun and, you know, I think he made a bad decision on that particular occasion. . . . But it's not a possession in furtherance of in the actual sense that the guideline is intended to apply to and I think the government and I sort of agree.

Sentencing Hr'g Tr. 18. His counsel also presented Wright's letter to the Court, in which Wright informed the Court that his sister had called him for help on the night of the car accident because of a domestic dispute, but that he has a good relationship with both his sister and her husband, the man he intended to threaten with the Rossi revolver, and that the husband was in court supporting Wright. The connection between the firearm and the assault on Wright's sister was documented in a search warrant affidavit that detailed an intercepted call between Wright and his sister, and it was referenced in the agreed-upon statement of facts and was thus undisputed. So where Wright's counsel was aware of the underlying facts regarding Wright's motivation to protect his sister and presented them to the Court, and the Court and the Government effectively accepted those facts, the Court finds no grounds to conclude that defense counsel acted deficiently in failing to seek out

additional facts relating to that incident. *See Strickland*, 466 U.S. at 691 ("[W]hen the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether.").

Third, although Wright may implicitly be asserting that his attorney was constitutionally deficient for agreeing to the two-level enhancement in the plea agreement, the Court finds no such deficiency. Even accepting that Wright's possession of the firearm was motivated at least in part by a desire to protect his sister, the facts that the firearm was transported in a car alongside cocaine and that the person he planned to confront with the firearm was one of his drug customers provide sufficient basis to support the inclusion of the enhancement. As for whether Wright's counsel should have accepted the enhancement, as a practical matter, the plea agreement gave Wright the benefit of an agreed-upon sentencing recommendation that corresponded to the Guidelines range that would have applied *without* the firearm enhancement. The parties stipulated under Rule 11(c)(1)(C) to a prison sentence between 78 and 96 months. Wright's total offense level under the Guidelines without the enhancement for possession of a dangerous weapon would have been 27, assuming that the other agreed-upon sentencing factors applied. Applying the criminal history category of II established in the Presentence Investigation Report, the sentencing range for offense level 27 would have been 78–97 months of imprisonment under the Guidelines. With the two-level firearm enhancement included, the Guidelines range would have been 97–121 months. Where the plea agreement effectively guaranteed that Wright would be sentenced as if the enhancement did not apply and that there could be no upward variance by the Court based on the possession of a firearm or otherwise without Wright having the opportunity to withdraw his guilty plea, *see* Fed. R. Crim. P. 11(c)(1)(C), the Court concludes that defense counsel's agreement to

the firearm enhancement was a reasonable strategy and not deficient performance under *Strickland*. *See Strickland*, 466 U.S. at 689, 691; *Truesdale v. Moore*, 142 F.3d 749, 753–54 (4th Cir. 1998).

Finally, Wright has not shown that he was prejudiced by his counsel's failure to further investigate the facts underlying the firearm enhancement. He has not stated, nor can he establish, that he would have rejected the plea agreement and insisted on going to trial had his attorney objected to the firearm enhancement or pursued additional facts to undermine it. *See Hill*, 474 U.S. at 59. As discussed above, Wright and the Government agreed to recommend a sentencing range which approximated the Guidelines range that would have applied without the firearm enhancement and was below both the Guidelines range of 97–121 months set forth in the plea agreement based on the inclusion of the firearm enhancement and the Guidelines range of 108–135 months actually found by the Court at sentencing. Thus, establishing that the firearm enhancement did not apply would have done nothing to reduce the likely sentence after a guilty plea. On the other hand, had Wright proceeded to trial and been convicted, even without the firearm enhancement he likely would have had an offense level of 30, due to the lack of any downward adjustment for acceptance of responsibility, resulting in an advisory guideline range of 108–135 months of imprisonment. Even if he could qualify for early release after completion of the RDAP program, he would have received a reduction of no more than 12 months, *see* 28 C.F.R. § 550.55(b)(5)(ii), so his best case scenario after trial would have been a final sentence of 96–123 months—above the sentence he faced by accepting the Government's plea offer with the firearm enhancement. And by going to trial, Wright would have risked still receiving the firearm enhancement, which if proven by the Government would have resulted in an offense level after trial of 32, a Guidelines range of 135–168 months, and no reduction through RDAP. Under these

circumstances, there was no logical reason for Wright to reject the Government's favorable plea offer and proceed to trial even if his attorney had pursued and found evidence with which to undermine the firearm enhancement.

Notably, Wright almost certainly would have been convicted at trial, because the Government had amassed substantial evidence against him and his co-conspirators. The investigation against the DTO lasted more than two years, and the Government had collected text messages, recorded hundreds of phone calls through wiretaps, surveilled the members of the DTO, and identified numerous witnesses. As detailed in a search warrant affidavit submitted to support a search of a stash house controlled by Wright, the Government had intercepted communications on the cell phones of Wright and several co-conspirators, including conversations and text messages between and among Nikko Wright, Mario Wright, and other co-conspirators in which they arranged drug transfers and pickups in Maryland, Delaware, and New Jersey. Based on such intercepted communications, the Government conducted surveillance of Wright and others and observed likely drug transactions. Finally, as discussed above, Wright was a passenger in a car that led the police on a high-speed chase that resulted in a car accident and the discovery of both a firearm and cocaine in the vehicle. It would not have been reasonable for Wright, in the face of this evidence, to reject a plea agreement stipulating to a maximum sentence of eight years of imprisonment and instead face a likely sentence of somewhere between 9 and 14 years after trial, based on the hope of securing a one-year reduction in his sentence through RDAP. *See Hooper*, 845 F.2d at 475.

Lastly, Wright cannot establish prejudice from his attorney's alleged failure to inform him that the firearm enhancement would leave him ineligible for early release based on RDAP. Prisoners have no statutory right to participate in drug treatment while incarcerated, *see Moody v.*

12

*Daggett*, 429 U.S. 78, 88 n. 9 (1976), nor do they have a constitutional right to early release from a valid sentence, *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Consequently, even if counsel's failure to object to or disprove a sentencing enhancement that rendered Wright ineligible for the RDAP early release program could be deemed deficient, it would not establish prejudice. *See Jones v. United States*, No. 08-105-01, 2010 WL 4484532, at *5 (E.D.N.C. Oct. 25, 2010) (holding that there was no prejudice from a failure to object to a § 2D1.1(b)(1) enhancement at sentencing even though it rendered the defendant ineligible for RDAP early release). Since Wright cannot establish either of the prongs of the *Strickland* analysis, his claim of ineffective assistance of counsel must fail.

### III. Certificate of Appealability

Wright has no absolute entitlement to appeal a district court's denial of the Motion. *See* 28 U.S.C. § 2253(c)(1)(B). To appeal this Court's denial of the Motion, Wright must obtain a certificate of appealability ("COA"). *Id.* A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). When a district court dismisses a Motion to Vacate solely on procedural grounds, a prisoner must demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling'" in order to be entitled to a COA. *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a district court reaches the merits, as it has here, a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because Wright has made no such showing, this Court will not issue a COA. Although this Court declines to issue a COA, Wright may still seek a COA from

the Fourth Circuit. *See* Fed. R. App. P. 22(b)(1) (stating that if a district judge denies a COA, a petitioner "may request a circuit judge to issue it").

## CONCLUSION

For the foregoing reasons, Wright's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 is DENIED. The Court declines to issue a certificate of appealability. A separate Order shall issue.

Date: January 15, 2019

THEODORE D. CHUANG
United States District Judge